72 F.3d 138
 67 Empl. Prac. Dec. P 30,948, 17 O.S.H. Cas.
(BNA) 1465,
1996 O.S.H.D. (CCH) P 30,948
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 
 NOBLE STEEL, INC., Petitioner,
v.
OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, Respondent.
 No. 95-9512.
 United States Court of Appeals, Tenth Circuit.
 Dec. 14, 1995.
 ORDER AND JUDGMENT[1]
 Before BRISCOE and LOGAN, Circuit Judges, and THOMPSON,** District Judge.
 BRISCOE, Circuit Judge.
 
 
 1
 After examining the briefs and record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Noble Steel, Inc., petitions for review of an order of the Occupational Safety and Health Review Commission upholding a citation issued to petitioner for violating 29 C.F.R.1926.701(b) (failure to guard protruding reinforcing steel) and 1926.1051(a) (failure to provide a stairway or ladder where there is a break in elevation of nineteen inches or more). Petitioner contends that the inspection of its work site was conducted in violation of 29 U.S.C. 657(a), and that the rejection of its affirmative defenses is not supported by substantial evidence. We disagree and affirm.
 
 
 3
 Petitioner was a subcontractor on a water treatment facility under construction in Clinton, Oklahoma. OSHA inspector Gerald Young first visited the work site on September 21, 1993. Young presented his credentials to a representative of the general contractor, Williams Brothers, and asked if he could look around. The Williams representative said he could. Young did not ask for identification of all the subcontractors working at the site.
 
 
 4
 On September 22, 1993, when Young arrived on the work site, he again met with the Williams representative, explained what he was going to do, and afforded the representative the opportunity to accompany him on the inspection.
 
 
 5
 Randy Palumbo, petitioner's employee, then arrived. Young testified he presented his credentials, explained the purpose of his visit, and asked for permission to come on petitioner's portion of the work site. Palumbo gave "tentative" permission, which is considered permission under the OSHA Field Operations Manual (FOM). Palumbo then made a telephone call. Young proceeded to conduct his investigation, which he videotaped. He observed numerous pieces of vertically standing rebar, without covers, onto which employees could fall. He also observed employees entering and exiting a chlorine filter basin by climbing up rebar that was loosely in place on wire ties.
 
 
 6
 Palumbo testified that he was working in the basin when he looked up and saw Young. Palumbo claimed Young had videotaped the inspection before asking Palumbo's permission to do so, and denied making a telephone call. However, after viewing the videotape in which Palumbo could see he was not in the basin when the videotape was taken, Palumbo admitted he was not sure when Young asked permission. On redirect, he testified that the videotape did not show the entire basin and he might have been in it but not visible. Young clarified, however, that there was only one person in the basin when he videotaped it, and it was not Palumbo.
 
 
 7
 Petitioner moved to exclude the videotape, arguing that Young had not followed provisions of the FOM requiring that the general contractor notify the subcontractors before an inspection and ask them to assemble in the general contractor's office, and had not received permission to videotape the inspection. The administrative law judge (ALJ) held that lack of compliance with the FOM had no bearing on the admissibility of the tape because the FOM does not have the force of law. Crediting Young's testimony over Palumbo's, he found that Young received permission from Palumbo to conduct the inspection. He also concluded that the chlorine basin was an open area rather than one in which petitioner had a reasonable expectation of privacy, and that Williams' representative validly consented to the inspection.
 
 
 8
 Where the Commission's findings are supported by substantial evidence in the record, they are conclusive on review. Marshall v. Cities Serv. Oil Co., 577 F.2d 126, 130 (10th Cir.1978). Its decision will be upheld unless arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id.
 
 
 9
 Petitioner concedes that the FOM does not have the force and effect of law and does not confer important procedural or substantive rights on individuals. See Secretary of Labor v. Caterpillar, Inc., 15 O.S.H. Cas. (BNA) 2153, 2173 n. 24 (1993). Petitioner nevertheless argues that evidence that the FOM was not followed may establish Young's inspection was contrary to law, specifically, that it was conducted without valid consent. We turn to whether there is evidence supporting the finding that Young received consent for the inspection.
 
 
 10
 As noted, the ALJ found that Palumbo consented to the inspection by finding Young's testimony more credible than Palumbo's. "Decisions by the agency based on credibility are not reviewable by this court unless they are contradicted by uncontrovertible documentary evidence or physical facts." Edward J. Mawod & Co. v. SEC, 591 F.2d 588, 593 (10th Cir.1979)(quotation omitted). Petitioner notes several alleged inconsistencies in Young's testimony, but has not shown Young's testimony on the critical issue--whether Palumbo consented to the inspection before it occurred--was contradicted by uncontrovertible documentary evidence or physical facts.
 
 
 11
 Petitioner also contends the ALJ inadequately explained his evaluation of the credibility of Young's and Palumbo's testimony. "[A] judge's credibility evaluation must be explained if the Commission is to defer to it." Secretary of Labor v. Equitable Shipyards, Inc., 13 O.S.H. Cas. (BNA) 1177, 1180 (1987). The ALJ adequately explained that he credited Young's testimony over Palumbo's because Palumbo was uncertain about his statements after viewing the videotape, and his recollection of the events was directly contradicted by the videotape. We find no error or inadequacy in the ALJ's evaluation of Young's and Palumbo's credibility.
 
 
 12
 Petitioner also challenges the ALJ's finding that Williams' representative consented to the inspection, arguing that he lacked authority to do so. Consent to a search may be given by one with common authority over or other sufficient relationship to the premises. United States v. Matlock, 415 U.S. 164, 171 (1974). Williams undoubtedly could consent to a search of its portion of the work site. Then, once Young legitimately was on Williams' portion of the work site, he could further inspect those matters which were in plain view. Donovan v. A.A. Beiro Constr. Co., 746 F.2d 894, 901-02, 903 (D.C.Cir.1984)(noting authority to search extends to most objects in plain view, including equipment in use in the open construction site which was not enclosed or secured). Young testified that the basins in which petitioner was working were "all out in the open." R. Vol. II at 67-68. We therefore uphold the ALJ's determination that Young received consent for the inspection.
 
 
 13
 Petitioner next contends the ALJ's finding that it did not establish its affirmative defenses to the violations is not supported by substantial evidence. The ALJ found the fact that Williams did not provide petitioner with protective mushroom caps for the rebar, as required by their contract, did not excuse petitioner from complying with OSHA standards. The ALJ noted that petitioner could have insisted on Williams providing the caps and, if Williams refused, could have purchased the caps itself.
 
 
 14
 Petitioner contends it "repeatedly" asked Williams to supply the caps. Palumbo testified he "mentioned" to Williams "on more than one occasion," R. Vol. II at 89-90, that caps would be better than the plywood cover being used. This evidence does not undermine the ALJ's finding that petitioner could have insisted that Williams provide the caps.
 
 
 15
 Petitioner also argues there was no evidence presented that it would have been economically feasible for it to purchase the caps. However, it was petitioner's burden to prove economic infeasibility. Southern Colo. Prestress Co. v. OSHRC, 586 F.2d 1342, 1351 (10th Cir.1978).
 
 
 16
 Finally, petitioner challenges the ALJ's finding that use of the rebar wall for ingress and egress into the basin did not provide an equal or equivalent degree of safety as a ladder. While 29 C.F.R.1926.1050(b) does define "equivalent" to allow use of alternatives, the regulation that petitioner violated--29 C.F.R.1926.1051(a)--does not contain the term "equivalent."
 
 
 17
 Nevertheless, petitioner could establish an affirmative defense by showing the abatement methods prescribed by the OSHA standards were infeasible and that alternative protective measures were used. Secretary of Labor v. Seibel Modern Mfg. & Welding Corp., 15 O.S.H. Cas. (BNA) 1218, 1226-28 (1991). The ALJ found petitioner failed to establish use of a ladder was infeasible. He noted the only evidence presented in support of this defense was the bare assertion that petitioner could not use a ladder. No diagrams or dimensions were entered into evidence to support its assertion. The record fully supports the ALJ's finding.
 
 
 18
 Further, the ALJ, crediting Young's testimony, found the rebar petitioner used in lieu of a ladder was not attached to wire ties and could roll around, creating unsteady footing and exposing employees to the risk of falling onto the rebar below. We find no basis for rejecting the ALJ's reliance on Young's testimony, and conclude petitioner did not establish use of the rebar was an acceptable alternative protective measure.
 
 
 19
 The order is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Ralph G. Thompson, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation